**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0470
Xavier Dennis
v.
The State

On Appeal from the Superior Court of Chatham County
No. 21-03684

Decided: May 19, 2026

PINSON, Justice.

Xavier Dennis was convicted of felony murder and other crimes in connection with the shooting death of Freddie Lee Wallace.[1] On appeal, he claims that his convictions for felony murder predicated on conspiracy to commit armed robbery and attempted

---

[1] The crimes happened on the evening of February 13, 2021. Roughly six months later, a grand jury indicted Dennis for malice murder (Count 1), felony murder predicated on conspiracy to commit armed robbery (Count 2), attempted armed robbery (Count 3), conspiracy to commit armed robbery (Count 4), and possession of a firearm during the commission of a felony (Counts 5–6). In December 2022, a jury returned a guilty verdict on all counts except malice murder (Count 1) and one count of possession of a firearm during the commission of a felony (Count 5). The trial court sentenced Dennis to life with the possibility of parole (Count 2) plus five years to be served consecutively (Count 6) and 10 years to be served concurrently (Count 3). Count 2 merged with Count 4 and thus was vacated by law.

Dennis timely moved for a new trial in January 2023, which he amended in August 2023. The court denied Dennis's motion for new trial in August 2025, and he timely appealed to this Court, where his case was docketed to the term beginning in December 2025 and submitted for a decision on the briefs.

armed robbery should have merged, and that his rights under the Confrontation Clause were violated when a detective testified at trial that he and Cameron Blige, his co-defendant, were brothers based in part on statements given by family members and girlfriends. But those convictions do not merge because those crimes involve different categories of injury — loss of life and loss of property. As for the Confrontation Clause claim, Dennis has failed to show plain error because he has not shown that any error in admitting the testimony in question likely affected the outcome of his trial. So Dennis's convictions and sentences are affirmed.

1. The evidence at trial showed the following. Around 8:30 p.m. on the night of the incident, Freddie Wallace went to pick up his girlfriend, Ni'yokia Rhett, from work. After that, Wallace got a call from a friend that "someone needed something" and the couple then went to pick up one of Wallace's friends, Cedric Wright. The group then drove to an apartment complex because Dennis and his co-defendant, Blige, had contacted Wallace earlier that day about buying marijuana. When the car pulled up, Dennis and Blige climbed in. Wallace continued as the driver and Rhett sat in the front passenger seat. Wright sat in the back middle seat with Blige and Dennis on each side of him. Suddenly, Blige and Dennis pulled out guns and said, "Give it up."[2] Wallace asked if he could pull over for Rhett to get out, but before Rhett heard an answer, two gunshots went off, so she jumped out of the car. Wallace, Wright, Dennis, and Blige remained in the car. Surveillance footage showed that Rhett immediately got up and ran to the car as it crashed into the apartment complex sign. Blige left the car

---

[2] Rhett testified that Wallace also had a gun sitting in his lap but that he never pulled it out. She also explained that although she initially told officers only one of the defendants had a gun, since then, "everything [wa]s finally coming back" to her and she believed there were actually two shooters.

and ran away. Dennis also got out of the car but paused for a moment before fleeing. Rhett ran past him to get to Wallace and saw Dennis drop his phone before fleeing. When the police arrived at the scene, Rhett and Wright were trying to help Wallace. He ultimately died from multiple gunshot wounds from a nine-millimeter pistol.[3]

The police determined that the phone found at the scene belonged to Dennis. Data extracted from the phone pursuant to a search warrant showed that on the day of the murder, Blige had texted Wallace's contact information to Dennis, and Wallace and Dennis had called each other approximately 14 times that day.[4] Dennis and Blige had also been in constant contact before and after the murder. Two days before the murder, Blige texted Dennis, "Get dat hammer to big boy 9 Taurus." On the day of the murder, Blige and Dennis called each other about 18 times. Shortly before the murder, Blige texted Dennis, "He a go 2 zips an a 4 way a hammer an all the money in his girl purse get dat hammer to." The homicide detective testified that this meant, "He [Wallace] a go. Two ounces of marijuana, four ounces of cocaine, a gun, and all the money in his girl's purse. Get the gun, too." Blige also texted "Don't miss out Lil bra he got that mayne." After the shooting, Blige repeatedly texted Dennis "wya," meaning "where you at?"

2. Dennis claims that his conviction for attempted armed

---

[3] The GBI firearms expert testified that the nine-millimeter cartridge casings recovered from Wallace's car suggest that he was shot with a Ruger or Taurus pistol, but that was not "an all-inclusive list" of possible firearms.

[4] Investigators were able to use the phone found at the scene to identify Blige's number. The contact name for his number in the recovered phone was "Mac11." Blige's Facebook name is "Big Ol' Mac," and his Instagram name was "BicMax11x." The phone number was also connected to a CashApp account for Cameron Blige.

robbery should have merged with his conviction for felony murder. Merger questions are reviewed de novo. *Regent v. State*, 299 Ga. 172, 174 (2016).

Merger doctrine applies when a defendant's "same conduct" can be used to establish the commission of multiple crimes. OCGA § 16-1-7(a). Although the defendant may be prosecuted for each crime, a defendant may not be convicted of more than one offense if "one crime is included in the other." OCGA § 16-1-7(a)(1). Code section 16-1-6 identifies a couple ways a crime may be deemed "included in" another. First, under subsection (1) of that provision, a crime is included in another when one crime requires a lesser mental state than the other crime charged, or the crime can be proven by the same or less than all the facts necessary to prove the other crime. See OCGA § 16-1-6(1). We have called this the "required evidence" test because "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Drinkard v. Walker*, 281 Ga. 211, 215 (2006). Second, under subsection (2) of that provision, a crime is "included in" another when the only difference between the offenses charged is that one requires a "less serious injury or risk of injury to the same person."

Dennis rests his merger claim only on subsection (2).[5] Convictions merge under that provision only if the injuries resulting from the crimes of conviction at issue fit within the same category. See *Jackson v. Crickmar*, 311 Ga. 870, 874–75 (2021). For instance, under this provision, a conviction for aggravated battery

---

[5] Dennis says that his convictions for attempted armed robbery and felony murder based on conspiracy to commit armed robbery do not merge under the "required evidence" test. Because he expressly disclaims merger of these convictions under that test, we express no opinion as to that argument.

4

merges into a conviction for murder because those crimes involve lesser and greater degrees of the same *kind* of injury: bodily injury. *Soilberry v. State*, 289 Ga. 770, 772–73 (2011). On the other hand, convictions for attempted armed robbery and attempted murder do not merge under this provision because the crimes involve injuries in "'entirely different *categories*'" — loss of life versus loss of property — not merely injuries that differ in degree. *Jackson*, 311 Ga. at 874 (quoting *Epperson v. State*, 349 Ga. App. 25, 35 (2016)).

Just so here. The injuries underlying the crimes of conviction here — felony murder predicated on conspiracy to commit armed robbery and attempted armed robbery — are different in kind. Felony murder necessarily results in a loss of life, while the injury included as an element of armed robbery involves only the loss of property. Compare OCGA § 16-5-1(c) (defining felony murder as "caus[ing] the death of another human being" in the commission of a felony) with OCGA § 16-8-41(a) (defining armed robbery, which requires "tak[ing] property of another from the person or the immediate presence of another"). See *Jiles v. State*, 320 Ga. 605, 615 (2024) ("[T]he jury found [defendant] guilty of felony murder, which necessarily required a finding that [defendant] killed [victim] by shooting him."); *Prater v. State*, 273 Ga. 477, 478 (2001) ("The distinguishing characteristic of an armed robbery is the taking of another's property by the use of force or intimidation."). So Dennis's convictions do not merge under section 16-1-6(2). *Jackson*, 311 Ga. at 874. See also, e.g., *Ledford v. State*, 289 Ga. 70, 74 (2011), overruled in part on other grounds by *Willis v. State*, 304 Ga. 686, 658 n.3 (2018) (concluding that defendant's convictions for aggravated battery and murder merged because "the only difference" between the crimes, both of which involve physical injury, "is that the former requires a less serious injury

to the person of the victim, as the injury to a bodily member specified in the aggravated battery statute is obviously less serious than death"); *Metcalf v. State*, 349 Ga. App. 408, 423 (2019) (stating when "crimes involve injury to a *different* property or public interest, the crimes do not merge" under OCGA § 16-1-6(2)).

3. Dennis claims that the trial court committed plain error by admitting testimony in violation of his rights under the Confrontation Clause. In support, he points to Detective Hildebrand's testimony at trial, in which the detective explained that he learned that Dennis and Blige were brothers by speaking to family members and girlfriends, and from reviewing social media and cell phone records in connection with this case. In Dennis's view, this testimony amounted to an admission of statements made by family members and girlfriends that he and Blige were brothers.[6] Although both defendants objected to this testimony on hearsay grounds, neither objected that admitting it violated the Confrontation Clause. So, as Dennis concedes, we review that claim only for plain error. *Pender v. State*, 311 Ga. 98, 114 (2021). To establish plain error, Dennis must show that the trial court committed a clear or obvious error, that he has not affirmatively waived the error, and that the error affected his substantial rights, which means that it likely affected the outcome of his trial. *State v. Kelly*, 290 Ga. 29, 33 (2011). If that showing is made, then we have discretion to remedy the error if it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Arnsdorff v. State*, 321 Ga. 880, 887 (2025) (quotation marks omitted).

As an initial matter, it is doubtful that Dennis could establish error here, much less plain error. The Confrontation Clause

---

[6] It is worth noting, however, that Detective Hildebrand testified that he also got this information from cell phone extractions and social media of Dennis and Blige.

6

"bars the admission at trial of an absent witness's statements ... unless the witness is unavailable and the defendant had a prior chance to subject her to cross-examination." *Smith v. Arizona*, 602 US 779, 784 (2024). Determining whether a statement was admitted in violation of the Confrontation Clause requires a court to consider, among other things, whether the statement was testimonial — that is, made with the "primary purpose" to "establish or prove past events potentially relevant to later prosecutions." *Davis v. Washington*, 547 US 813, 822 (2006) (quotation marks omitted). But Dennis has not identified in the record any specific statement from Edwards or other family members that he claims was introduced in violation of the Confrontation Clause, much less any evidence in the record about the circumstances surrounding the making of such a statement. Absent such evidence, it is not clear how a defendant could possibly establish a violation of the Confrontation Clause. Cf. *Smith v. State*, 323 Ga. 246, 251 (2026) (concluding that defendant did not carry his burden to identify testimony that he claims should have been excluded on hearsay and Confrontation Clause grounds); *Pierce v. State*, 319 Ga. 846, 854–55 (2024) (explaining that the Court was "unable to meaningfully analyze the merits" of defendant's alleged Confrontation Clause violation because defendant had "not specifically identified the testimony from [the witness] that he contends was objectionable under the Confrontation Clause.").

But even putting aside the question of error, this claim fails because Dennis has failed to establish that Detective Hildebrand's testimony about defendants' familial connection likely affected the outcome of his trial. Dennis notes that the State identified himself and Blige as brothers during its opening and closing arguments, but he does not explain why knowing about this familial relationship would have made any difference to a jury given the strong evidence of Dennis's guilt unrelated to the defendants'

7

familial connection. Rhett testified that while she was in the car with Wallace he "got some communications," and then went to pick up another friend before going to meet two individuals at an apartment complex. She said that when they arrived at the complex, two people entered the car, pulled a gun, and said, "Give it up." She also testified that before she was able to leave the car, she heard two gunshots. After the shooting, Rhett stated that she was running towards the car to check on Wallace, who had been shot, when she watched two people flee from the car and saw one of them drop his phone. Surveillance video footage showed the same. Further, data extracted from the cell phone recovered from the scene showed that it belonged to Dennis. And data extracted from other phones showed numerous phone calls between Dennis and Blige before the incident; texts from before the shooting, in which Blige told Dennis to get a 9mm Taurus (a gun that matched the casings found in Wallace's car), described the plan to rob Wallace and Rhett as "a go," and told Dennis not to "miss out"; and texts from Blige to Dennis after the incident asked "wya," ("where you at"). In light of the evidence at trial, which in combination painted a clear picture of Dennis and Blige working in concert to rob the victims, Dennis has not demonstrated that admitting any statements indicating that Dennis and Blige are brothers likely affected the outcome of his trial. See *Henderson v. State*, 317 Ga. 66, 79–80 (2023) (no plain error when "the evidence against [defendant] was quite strong" so defendant failed to show that the court's failure to give a limiting instruction affected the outcome of trial); *Pender v. State*, 311 Ga. 98, 114–16 (2021) (no plain error because even assuming a firearms examiner's statement was "testimonial," any error in admitting it had no effect on the outcome of trial); *Morris v. State*, 311 Ga. 247, 256 (2021) (no plain error because the defendant failed to show that the error probably affected the outcome of trial given "other substantial evidence" of

8

defendant's guilt); *Lupoe v. State*, 300 Ga. 233, 250 (2016) (no plain error because ample evidence other than the challenged testimony showed defendant was part of the gang and acted in furtherance of the gang's activities).

*Judgment affirmed. All the Justices concur, except Warren, P.J., not participating.*